UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KATHERINE EALY                                                           PLAINTIFF

VS.                                         CIVIL ACTION NO. 3:13CV409TSL-JMR

CAROLYN W. COLVIN,                                   DEFENDANT
Acting Commissioner of Social Security Administration

**REPORT AND RECOMMENDATION**

Plaintiff, Katherine Ealy, filed a Complaint (ECF No. 1) on June 28, 2013 for Judicial Review of Defendant's, Commissioner of Social Security ("Commissioner") denial of disability, disability insurance benefits, and supplemental social security income. Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 9), Memorandum in Support Thereof (ECF No. 10), Government's Motion to Affirm the Decision of the Commissioner (ECF No. 12), Memorandum in Support Thereof (ECF No. 13), and Rebuttal of Plaintiff (ECF No. 14).

On April 30, 2010, Plaintiff filed her application for Supplemental Social Security Income (SSI) and for a period of disability and disability insurance benefits asserting an onset date of July 1, 2008. (ECF No. 8, pp. 120-124). The application was denied initially on June 15, 2012. (ECF No. 8, pp. 12-24), and upon reconsideration on May 29, 2013. (ECF No. 8, pp. 4-7). A video hearing was held in front of Administrative Law Judge (ALJ) Douglas Gilmer on June 12, 2012 in Meridian, Mississippi. (ECF No. 8, p. 15). The matter is now ripe for review under sections 205(g) and 1631(c)(3) of the Social Security Act (Act), 42 U.S.C. §§ 405(g),1383(c)(3).

Plaintiff was born on December 17, 1978. (ECF No.1). She was 29 years old at the time of the alleged onset date and 33 years old at the time of the ALJ's decision. (ECF No. 8, p. 18). She has some prior college education and previous work experience as a poultry dressing worker.

(ECF No. 8, pp. 21-33). Plaintiff alleges that she has been unable to work since July 1, 2008 due to Posttraumatic Stress Disorder (PTSD), major depressive disorder, status post fracture to the right tibia and ankle, status post fracture to the hip, osteoarthritis affecting the hip, obesity, and anxiety disorder. (ECF No. 8, p. 5, Finding No. 3).

After review of her medical conditions, the ALJ found that Plaintiff retained the Residual Functional Capacity (RFC) to perform light work with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; limited to performance of simple, routine, and repetitive tasks with only occasional interaction with the public, coworkers, and supervisors. (ECF No. 8, p. 18, Finding No. 5). The ALJ also determined that Plaintiff was capable of performing her past relevant work as a poultry dressing worker given her RFC. (ECF No. 8, p. 23, Finding No. 6). He further discerned that there were significant numbers of jobs in the national and local economy which Plaintiff was capable of performing. (ECF No. 8, pp. 23-24, Finding No. 6). Therefore, the ALJ found Plaintiff had not been disabled as defined by the Social Security Act from July 1, 2008 to the date of his decision. (ECF No. 8, p. 24, Finding No. 7).

Plaintiff alleges that her impairments stem from a serious automobile accident in 1998, in which she broke her pelvis, right hip, right leg and has suffered persistent pain since that time. She underwent surgery on her right leg subsequent to the accident. (ECF No. 8, pp. 31-33). Additionally, her leg was broken in a physical altercation with a man in 2009, also resulting in a surgery to repair it. (ECF No. 8, pp. 278, 282). Furthermore, she alleges that her psychological impairments were compounded by multiple family-related issues, including physical and sexual abuse and difficulty raising her two children. (ECF No. 8, pp. 36-40). She had stopped working due to her increasing difficulty in coping with her impairments on July 1, 2008. (ECF No. 8, p. 31). Specifically, Plaintiff alleges that she was terminated from her previous employment due to

her psychological impairments. (ECF No. 8, p. 311).

In July 2010, Dr. Robert Tatum, a specialist in Internal Medicine, examined Plaintiff (ECF No. 8, pp. 211-214) and determined her status post-motor vehicle accident (MVA) as it pertained to her right hip, right lower extremity injury and posttraumatic arthritis. He found that Plaintiff had a mild impairment with mild effects on her ability to stoop, bend, squat, reach, push, pull, crouch, etc. (ECF No. 8, pp. 211-213) In addition he determined that a range of motion exercises and stretches could benefit Plaintiff. *Id.* On September 10, 2010, Dr. Oliver Joseph performed x-rays and observed evidence of prior repair to Plaintiff's leg but no evidence of hardware failure or loosening, or acute bony injury. His impression was sclerosis about the left joint and chronic changes about the superior ramus. (ECF No. 8, pp. 217-218).

Plaintiff was admitted to St. Dominic Hospital in Jackson, Mississippi on February 18, 2011, for inpatient treatment because of depression and suicidal thoughts after the failure of previous outpatient treatment. (ECF No. 8, pp. 243-268). Diagnosis by Dr. Marshall Belaga on Axis I was of recurrent, severe Major Depression absent psychotic features, PTSD and Panic Disorder. (ECF No. 8, p. 254). He further found on Axis II Depression, poor interpersonal relationships and seclusion with a Global Assessment of Functioning (GAF) of 30. *Id.* Plaintiff was discharged by Dr. Begala on February 22, 2011. (ECF No. 8, p. 252). His discharge diagnosis was major depression with psychotic features in partial remission on Axis I, arthritis and status post-fracture of the right leg at Axis III, moderate-poor relationships, financial and occupational problems on Axis IV, and a GAF of 55 at Axis V, and a general prognosis of Fair. (ECF No. 8, pp. 251-252).

Upon discharge, Plaintiff was treated at Weems Community Health Center (Weems) from

January 12, 2011 until April 19, 2012. (ECF No. 8, pp. 287-318). On August 4, 2011, and again on September 29, 2011, she received an Axis I diagnosis of major depressive disorder, single episode, severe with psychotic features, Axis III diagnosis of acid reflux, arthritis, and status post fracture of right leg, and Axis V GAF of 50 by Erica Flake, CFNP, RN. (ECF No. 8, pp. 302, 307). On April 19, 2012, Ms. Flake added an Axis I diagnosis of intermittent explosive disorder and an Axis II diagnosis of Antisocial Personality Disorder (ECF No. 8, p. 288) to her previous diagnosis.

From January 25, 2012 through February 28, 2012, Plaintiff was treated at Morton Family Medical Clinic (Morton) for muscle spasms and right foot pain relating to her prior 2009 surgery. (ECF No. 8, pp. 277-286). On February 28, 2012, Ruby LuCroy, Certified Nurse Practitioner (NP) with Morton, opined that Plaintiff could lift and carry a maximum of ten pounds, could stand and walk less than two hours, could sit for three hours, and would need to lie down at intervals during work shifts. (ECF No. 8, pp. 233-234). She further determined that Plaintiff could occasionally twist, stoop, and crouch, could not climb stairs or ladders, and could expect to miss less than once a month due to impairments. (ECF No. 8, pp. 235-237).

On March 27, 2012, Ashley Silvers, a Nurse Practitioner with the Clark Clinic, completed a medical opinion (ECF No. 8, pp. 238-242) in which she concurred with LuCroy's assessment for the most part, adding that Plaintiff would need to elevate her right leg occasionally, but differed from LuCroy's determination in finding that Plaintiff would need to miss work about three times a month. (ECF No. 8, pp. 239, 242).

On April 19, 2012, Nurse Flake opined that Plaintiff possessed fair ability in seven of sixteen mental abilities required for unskilled work and poor or no ability in nine of sixteen mental abilities needed for unskilled work. (ECF No. 8. pp. 229-232). She based her opinion on

Plaintiff's anxiety, impulsive and aggressive tendencies, recurrent depression with PTSD and intermittent explosive disorder. (ECF No. 8, p. 231). She further stated that Plaintiff had poor or no ability to interact with others and maintain appropriate social behavior, good ability to adhere to basic standards of cleanliness, and fair ability to travel to unfamiliar places and use public transportation. (ECF No. 8, pp. 231-232). She also determined that Plaintiff should expect to miss work more than three times a month due to impairments, but that Plaintiff would be able to manage her benefits in her own best interest. (ECF No. 8, p. 232).

This Court's review of the Commissioner's decision is limited to whether there is substantial evidence to support the Commissioner's findings, and whether the proper legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales* 42 U.S. 389 (1971); *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (Quoting Perales, 402 U.S. at 401). The Court may not "re-weigh the evidence or substitute our judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision." *Jack v. Astrue,* 426 F. App'x 243, 244-245 (5th Cir. 2011).

Evaluating a disability claim under the Act entails a five step sequential process. First, Claimant (the Plaintiff) must prove she is not currently engaged in substantial gainful activity (SGA). Second, Claimant must prove her impairment is severe such that it significantly limits her physical or mental ability to do basic work activities. Third, the ALJ must determine that Claimant's impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. Fourth, Claimant must prove that she is incapable of meeting the physical and mental demands of past relevant work. Fifth, and last, the Commissioner must prove that given Claimant's RFC, age, education, and past work, Claimant is capable of

performing other work available in the local or national economy. The Claimant has the burden in the first four steps; the burden shifts to the Commissioner for the fifth step.

Plaintiff first asserts that the ALJ errantly relied on testimony from the Vocational Expert (VE), Debbie Ann Baker Dean in finding that Ealy's impairments did not preclude her from performing past relevant work at Step 4 of the sequential process. (ECF No. 8, p. 15). Plaintiff contends that the VE's testimony regarding past relevant work conflicted with definitions in the Dictionary of Occupational Titles (DOT) in violation of Social Security Ruling (SSR) 00-4p, prejudicing the Plaintiff. The VE testified that Plaintiff was previously employed as a poultry dressing worker, and cited the corresponding DOT number as 525.687-070 for poultry dressing worker. (ECF No. 8, p. 44). In actuality, 525.687-070 corresponds to the job of "Poultry Dresser." The correct DOT number for Poultry Dressing Worker is 525.687-082. Plaintiff asserts that this error is prejudicial because her RFC, as determined by the ALJ, is limited to light work, and the requirements of Poultry Dressing Worker exceed the RFC requirements for light work. Thus, as a result of relying on the erroneous VE testimony, Plaintiff asserts that the ALJ mistakenly attributed the lesser vocational demands of Poultry Dresser to the (more strenuous) demands of Poultry Dressing Worker. (ECF No. 10, pp. 10-13). Secondly, Plaintiff contends that the Government failed its burden to establish employment opportunities within the scope of her existing limitations, and that VE testimony during this step also presented an unresolved conflict with the DOT by attributing the wrong skill level to the job of clock/watch assembler. (ECF No. 10, pp. 13-18). Specifically, Plaintiff asserts that at step 5 of the sequential process, the VE cited the job of clock/watch assembler as being within the Plaintiff's RFC, stating that it has a SVP of 2, whereas the DOT lists clock/watch assembler as an SVP of 7. (ECF No.10, p. 14). Thirdly,

Plaintiff alleges that the ALJ's determination of RFC was not based on substantial evidence because it did not account for all of Plaintiff's limitations. (ECF No. 10, pp. 18-24). Finally, Plaintiff contends that the ALJ failed to give the proper consideration to medical opinion evidence of Nurse Practitioners LuCroy, Flake, and Silver in reaching his determination violation of SSR 06-3p, ultimately prejudicing Plaintiff's RFC determination. (ECF No. 10, pp. 24-27).

In response, the Government counters that the VE did not identify any such inconsistencies and that there were no apparent conflicts with the DOT regarding the Plaintiff's prior employment. (ECF No. 13, pp. 5-7). Government further urges that the ALJ was correct in finding that Plaintiff was capable of working three other available jobs that the VE identified: laundry worker, DOT 302.685-010; marker, DOT 209.587-034; and clock/watch assembler, DOT 715.381-010. (ECF No. 13, pp. 7-9). Both laundry worker and marker require only light work and preparation and are unskilled. (ECF No. 8, p. 49). While Government acknowledges the inconsistency between VE's testimony and the actual Specific Vocational Preparation (SVP) of 7 for a clock/watch assembler position, it contends that this error is harmless because the other two available jobs still remain in laundry worker and marker and come with classifications of SVP 2. (ECF No. 13, pp. 7-8). Both of these jobs, Government alleges, are unskilled work requiring only simple instructions, as defined by SSR 96-9p. (ECF No. 13, pp. 7-8). Government also avers that the ALJ's finding of a disability insufficient to meet Listing criteria was based on the totality of the evidence at hand, including the RFC, and the fact that the ALJ did not explicitly include concentration limitations in his hypothetical does not obviate the legitimacy of his finding. (ECF No. 13, p. 11). Finally, the Government responds that because LuCroy, Silvers, and Flake are classified as "other sources" under SSR 06-03p, their opinions are not entitled to the deference or

weight that an opinion from an "acceptable medical source" would carry. (ECF No. 13, p. 12). After thorough review of these arguments, the Court finds the ALJ properly evaluated Ms. Ealy's claims and determined that she is not disabled.

SSR 00-4p holds that when a conflict exists between VE and the DOT, the ALJ is required to provide a reasonable explanation for his decision in selecting one source of information over the other. The administrative record provides that the ALJ did in fact rely on this VE testimony in ruling that Plaintiff possessed the RFC to return to her past relevant work. (ECF No. 8, pp. 23-24). The ALJ denied any such conflict existed, erroneously relying on the VE's statement that her testimony was consistent with the DOT. (ECF No. 8, p. 51). In its reply brief, the Government also denied the existence of a conflict between the VE and DOT, ignoring evidence to the contrary that the VE used the wrong DOT number and description for poultry dressing worker. (ECF No. 13, pp. 6-7). The Court finds that the record clearly affirms the Plaintiff's argument that VE provided the wrong DOT number, and thus the wrong skill level, SVP, and exertional level, when discussing the prior employment of Plaintiff. (ECF No. 8, pp. 47-48). Plaintiff is correct that the Government did not explain away this discrepancy in its brief; rather, it merely denies the existence of such a conflict. (ECF No. 12, pp. 5-7). Further, the ALJ did not provide a reasonable explanation for this conflict. (ECF No. 8, pp. 20-24).

In *Audler v. Astrue 501 F.3d 446, 448 (5th Cir. 2007)* (citing *Morris v. Bowen, 864 F.2d 333, 334 (5th Cir. 1988))*, the 5th Circuit Court of Appeals employed a 'harmless error' standard in cases of procedural missteps committed by the ALJ. According to this case and subsequent precedent, the error may be excusable and is not subject to remand where substantial evidence nonetheless supports the ALJ's decision and the Plaintiff's rights have not been unduly prejudiced by the error. "We do not now reach that question, because, even if such an impropriety exists, it

does not render the ALJ's determination unsupported by substantial evidence, and thus does not prejudice Morris's substantive rights." *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). In this instance, there is no doubt that the ALJ and VE erred in conflating the lesser physical requirements of Poultry Dresser with the more ardent demands of Poultry Dressing Worker. However, this lapse does not necessitate remand because it does not obviate the ultimate conclusion reached by the ALJ that Ms. Ealy is not disabled for the purposes of doing light work given her RFC. Had the ALJ's final decision hinged on Plaintiff's capacity to return to her previous relevant work, Plaintiff's rights would have been substantially and irrevocably harmed. "Additionally, the record as a whole supports the ALJ's conclusion that the plaintiff is able to do a range of light work and is not disabled as defined by the Social Security Act." *Reynolds v. Astrue, 2010 WL 583918, at 5*. In the pending matter, the Court finds substantial evidence nonetheless supports the ALJ's ultimate conclusion that Plaintiff is capable of performing light work as exists in the national economy, the procedural error notwithstanding. Plaintiff also fails to establish her burden at the other requisite steps in dispute.

Plaintiff also contends that the Government failed its burden to establish existing employment opportunities within the scope of her limitations (ECF No. 10, pp. 13-18) and that VE testimony during this step also produced an unresolved conflict with the DOT by attributing the wrong skill level to the job of clock/watch assembler. (ECF No. 10, p.14). Government, in response, urges that the ALJ was correct in finding that Plaintiff was capable of working two other available jobs that the VE identified: laundry worker, DOT 302.685-010; and marker, DOT 209.587-034. (ECF No. 8, p. 49). Both laundry worker and marker require only light work and preparation and are unskilled. *Id.* While Government acknowledges the inconsistency between VE's testimony and the actual SVP of 7 for a clock/watch assembler, it avers that this error is

harmless because two available jobs still remain in laundry worker and marker. (ECF No. 13, pp. 7-8). Both of these jobs, Government contends are unskilled work requiring only simple instructions, as defined by SSR 96-9p. (ECF No. 13, pp. 8-9). In this respect, the Court finds that the Government is correct that the VE's error was harmless, as the VE's opinions still concluded that there were two alternative jobs within the RFC limitations of the Plaintiff. (ECF No. 8, p. 49). Therefore, the Court finds that the ALJ's determination that Plaintiff is capable of performing other work is correct.

As to Plaintiff's third contention, the Court rejects Plaintiff's allegations that the RFC determined by the ALJ and the hypothetical presented to the VE were deficient because they did not take into account Plaintiff's limitations in concentration, persistence, and pace. (ECF No. 10, pp. 18-24). When the alleged mental impairments of an adult are evaluated, 20 C.F.R. §404.1520a mandates the use of a procedure known as "psychiatric review technique" ("PRT"). Step 1 of PRT requires reviewing the symptoms, signs, and laboratory findings to determine if claimant has a medically determinable impairment. 20 C.F.R. §404.1520a(b)(1). Step 2 requires rating functional limitations in four areas: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation; these are also known as the "B Criteria." 20 C.F.R. §404.1529a(b)(2) &(c)(3). The ALJ then assesses the severity of the impairment. If the impairment is deemed severe, but does not meet or equal a listed disorder, then the ALJ must conduct an RFC assessment. 20 C.F.R. §404.1520a(c)(3). In the pending case, the ALJ found moderate restriction in concentration, persistence, and pace at step 2 and then classified Plaintiff's impairment as "severe," but did not find that it met or equaled a listed impairment. Plaintiff argues that because the ALJ did not include this restriction in the hypothetical posed to the VE, the hypothetical was thus defective. (ECF No. 10, pp. 18-24).

In consideration of the precedent set in *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994), a hypothetical posed by the ALJ to the VE must reasonably incorporate all of claimant's disabilities recognized by the ALJ and afford the claimant an opportunity to correct deficiencies in the ALJ's questioning of the VE. The Government alleges that the ALJ's hypothetical limited Plaintiff to "simple, routine, and repetitive work," which fairly accounted for the aforementioned limitations. (ECF No. 8, p. 48). *Bordelon v. Astrue,* 281 Fed. Appx. 418 (5th Cir. 2008) evinces that every single limitation, such as difficulty in concentration, pace, and persistence, need not be explicitly named in the hypothetical; rather, they must be reasonably incorporated. "Such restrictions to rare public interaction, low stress, and simple, one to two-step instructions reflect that the ALJ reasonably incorporated Bordelon's moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon,* at 423. In the pending case, the ALJ posed a hypothetical to the VE limiting the Plaintiff to "simple, routine, and repetitive tasks with occasional interaction with the public, with coworkers, and with supervisors." (ECF No. 8, p. 48). This Court finds the ALJ's hypothetical fairly and reasonably reflected the difficulties that the Plaintiff endured according to her testimony. Plaintiff averred that she suffered from poor memory and a short attention span, and had difficulty focusing. (ECF No. 8, pp. 36-38). Additionally, she stated that she felt nervousness and anxiety around other people. (ECF No. 8, pp. 38-39). In light of *Bowling* and *Bordelon,* and the aforementioned testimony, the Court finds that this hypothetical reasonably accommodated Plaintiff's difficulties in concentration, persistence, and pace. As a result, the Court further finds the ALJ's finding that Plaintiff's impairment did not meet or equal a listed impairment was founded on substantial evidence. (ECF No. 8, p. 17, Finding No. 4).

Finally, the Court finds the ALJ was justified in using his discretion in not giving the

opinions of LuCroy, Silvers, and Flake controlling weight in the formation of Plaintiff's RFC because they are classified as "other sources" under SSR 06-03p, and not entitled to the weight that an "acceptable medical source," such as a treating physician, would carry. *See* 20 C.F.R. §§ 404.1513(d)(1), 404.1527(c)(2). In weighing the decisions of all the available medical opinions, the ALJ based his ultimate finding upon substantial evidence (ECF No. 8, pp. 15-24), particularly the reports of Dr. Robert Tatum, an "acceptable medical source." (ECF No. 8, pp. 211-214). Dr. Tatum determined that the Plaintiff has only a mild impairment which contradicted the severity of the findings of the Nurse Practitioners. *Id.* As a result, the ALJ discounted the opinions of the nurses because they conflicted with the "objective medical evidence" determined from Dr. Tatum's examinations of the Plaintiff. (ECF No. 8, p. 21-22). It is not within this Court's standard of review to second-guess or re-prioritize the deference given by the ALJ to various sources. Therefore, substantial evidence supports the ALJ's RFC determination.

Accordingly, it is recommended that the Plaintiff's Motion for Summary Judgment (ECF No. 9) be denied and the Government's Motion to Affirm the Decision of the Commissioner (ECF No. 12) be granted.

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions,

and recommendations contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the Report and Recommendation that have been accepted by the District Court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this is the 27th day of June, 2014.

*/s/ John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE